No. 13,296.

## GILBERT, ASSIGNEE, ET AL. *v.* McCORKLE ET AL.

VOLUNTARY ASSIGNMENT.— *Prior Mortgage.—Foreclosure.— Jurisdiction.*— Where a debtor makes a general assignment, under the statute, for the benefit of his creditors, a prior mortgagee is not bound to sue .for the foreclosure of his mortgage in the circuit court, where the matter in assignment is pending, but he may sue in any other court of competent jurisdiction, even though with his consent all the debtor's property has been delivered into the possession of the assignee.

SAME.—*Mortgage Made in Contemplation of Assignment.*—A mortgage, made in good faith by an insolvent debtor, covering all of his property, to secure a *bona fide* debt, although executed in contemplation of an assignment which follows on the succeeding day, is not carried into and made a part of the assignment, but it will stand as a valid and enforceable lien, even where the mortgagee has knowledge of the contemplated .assignment.

From the Vanderburgh Superior Court.

*D. B. Kumler, A. Gilchrist* and *C. A. DeBruler,* for appellants.

*J. M. Shackelford, S. B. Vance, J. S. Buchanan, C. Buchanan, O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, A. Iglehart, J. E. Iglehart, E. Taylor, R. C. Wilkinson, A. C. Tanner, W. W. Ireland, R. D. Richardson, J. T. Walker, G. F. Denby, P. Maier* and *H. A. Mattison,* for appellees.

MITCHELL, J.—Conrad Miller and Jacob Miller, partners, doing business under the firm name of Miller Bros., in the city of Evansville, Indiana, being in a failing condition, executed a mortgage upon all of their property, real and personal, including their notes and accounts, and choses in action, to secure certain of their creditors to whom they were indebted. The debts which the mortgage was given to secure were specifically described in the mortgage, and amounted to about $125,000.

Two persons were named as trustees, but the mortgage stipulated that it was given to secure the debts due the persons therein mentioned. This mortgage was executed on the 29th

day of March, 1886, and was duly recorded on the day it was executed.

The mortgagors were indebted in sums aggregating a large amount in addition to the sums secured by the mortgage. Miller Bros. executed a deed of general assignment of all their property for the benefit of all their creditors on the 30th day of March, 1886.   The appellant John Gilbert was named therein as assignee.   The assignment conformed to the provisions of the act of March 5th, 1859, regulating voluntary assignments for the benefit of creditors.   After the assignment had been executed, the assignee, with the concurrence of the trustees named in the mortgage, took possession of the firm assets, all of which had been included in the previous mortgage, and was proceeding to administer the trust under the direction of the circuit court of Vanderburgh county.

This action was commenced on the 12th day of April, 1886, in the superior court of Vanderburgh county, to foreclose the mortgage.   The assignee was made a party defendant.   Other creditors, whose claims were not secured by the mortgage, became parties upon their own application.

Upon issue made, a trial was had which resulted in a finding in favor of the mortgagees, fixing the amounts severally due them.   There was a decree of foreclosure, and an order for the sale of the property mortgaged.

Several questions of minor importance have been made on both sides.   For example, it is urged in respect to some of the claims set out as exhibits to the complaint, that there is a variance between the names of the payees of those claims and some of the parties named as plaintiffs.   And, on the other hand, the point is made, that it does not appear in the answer of the assignee with sufficient certainty, that the deed of assignment was recorded as the statute requires.   None of the questions referred to affect the substantial merits of the controversy.   Having examined each of these questions, it is sufficient to say, they do not involve the court below in any error.

There are two questions which are relied on for a reversal of the judgment. One involves the jurisdiction of the superior court of Vanderburgh county over the subject-matter. The other involves the validity of the mortgage as a security. It is insisted that the court in which the foreclosure suit was commenced, had no jurisdiction to entertain the proceeding, because the mortgaged property had been delivered into the possession of the assignee by or with the concurrence and assent of the mortgagees, or their representative, and was being administered under the direction and control of the Vanderburgh Circuit Court. It is said the property was, therefore, in the custody, and under the exclusive jurisdiction, of the circuit court, and that an answer setting forth the foregoing facts was sufficient in law to show that the superior court had no jurisdiction over the subject-matter.

It is said next, that the answers make it appear that the trustees and mortgagees knew at the time they took the mortgage, that the mortgagors were in failing circumstances, and that the mortgage covered all of their property, and that they contemplated making an assignment for the benefit of their creditors; hence, it is argued, the mortgage was a mere device to give the mortgagees an unjust preference over, and to hinder and delay, the other creditors of the mortgagors. The result which is said to follow is, that the mortgage and the assignment are to be construed together as a general assignment for the benefit of all the assignors' creditors, and that the mortgage, in so far as it gave a preference to the mortgagees, is void.

In respect to the question of jurisdiction: It has been settled by the decisions of this court, that where property, which is subject to the lien of an execution, is afterwards assigned, such property may nevertheless be seized, and taken out of the possession of the assignee by virtue of such prior lien. *Griffin* v. *Wallace*, 66 Ind. 410; *Marsh* v. *Vawter*, 71 Ind. 22; *Woolson* v. *Pipher*, 100 Ind. 306.

The assignment carries only the assignor's interest in the

property assigned, and does not affect the prior vested rights or remedies which a good-faith lien-holder may have therein. The assignee takes the property assigned subject to the encumbrance of the mortgage, and subject to all the rights and remedies of the mortgagees. *Recker* v. *Kilgore*, 62 Ind. 10.

It was competent for the assignee to have made application to the court in which the assignment was pending, for leave to pay off the encumbrance out of the general fund, or to have sold the property under the order of the court, subject to the liens. But neither the assignment, nor any proceeding which the assignee might have taken thereunder, could impair or postpone any remedy which the prior mortgagees might have availed themselves of against the assignors.

Section 2674, R. S. 1881, provides, in substance, that where property has been assigned, before the holder of any lien or encumbrance thereon shall be entitled to receive any part of his debt out of the general fund, he shall proceed to enforce the payment of his debt by sale, or otherwise, of the property, on which such lien or encumbrance exists.

This provision recognizes the right of a lien-holder to proceed by the usual and appropriate methods to enforce his lien. That the mortgagees, or trustees, consented that the property might go into the possession of the assignee, did not estop them from afterwards foreclosing their mortgage in any other court of competent jurisdiction; nor would that fact have estopped them from asserting a lien on the proceeds if the assignee had sold the property. *Stix* v. *Sadler*, 109 Ind. 254.

The authority of the court in which an assignment is pending, concerning the sale and disposition of the property assigned, is distinctly marked out in the statute. In respect to property which is subject to prior liens when it comes under its jurisdiction, the court may order that it be sold subject to the liens, or it may order that the liens be paid off out of the general fund. The statute does not, however, confer exclusive jurisdiction upon the court having control

of the assignment, to enforce the ordinary common law or other independent remedies of those who have antecedent rights in, or liens upon, the property, which are in no way affected by the assignment. This conclusion is not in conflict with *Grubbs* v. *Morris*, 103 Ind. 166.

`In so far, therefore, as the answers sought to challenge the jurisdiction of the superior court, they presented no obstacle to the proceedings. This conclusion is reached without taking into account the propriety of the form in which the answers were pleaded, being pleas in bar, in connection with other matter.

It is urged, moreover, that the foreclosure of the mortgage, to be followed by a sale of the property in pursuance thereof, will involve an unnecessary expense, and deplete the available assets of the estate, and that excessive attorneys' fees were stipulated for in the mortgage, and allowed by the superior court.

There is apparently some basis for this contention, but we can not perceive how this affects the question of the jurisdiction of the superior court over the subject-matter. It was competent for that court to have inquired into the matter of a proper allowance for attorneys' fees, and we must presume such inquiry was made, and that the attorneys' fees were adjusted in accordance with the evidence, and the other facts before the court. At all events, the question is not so presented by the record as to be a subject of review here.

This brings us to the next inquiry: Was the mortgage invalid, or did it and the deed of assignment constitute parts of the same transaction, so that the two resulted in nothing more than a voluntary assignment without preferences, under the act of March 5th, 1859?

It must be considered as settled by the decisions of this court, that so long as a debtor retains dominion over his own property, he may make any honest disposition of it he sees fit. He may sell or mortgage the whole, or any part of that which belongs to him, to pay or secure an honest debt. So

long as he does not choose to resort to the assignment law, he may prefer one creditor to another, and such preference is neither a fraud in law nor in fact, even though it be known that the debtor is in failing circumstances and contemplates an assignment, and even though such preference has the effect to hinder or delay other creditors in the collection of their claims.

In the absence of statutory prohibition, it is neither a legal nor moral wrong for a creditor to obtain payment of, or security for, an honest claim, even though he knows that others, equally deserving, will be thereby deprived of obtaining payment or security for their claims. Nor is it legally or morally wrong for a debtor to pay, or secure, to one or more of his creditors, that which is their due, even though he thereby disables himself from paying or securing other claims equally meritorious.

The assignment law in no way prevents a creditor from selling or mortgaging all of his property to secure one or more of his creditors, provided the transaction be free from fraud. *Dessar* v. *Field*, 99 Ind. 548; *Boling* v. *Howell*, 93 Ind. 329 (331); *Thompson* v. *Parker*, 86 Ind. 96.

The subsequent assignment has no retroactive effect, except upon property fraudulently transferred. This it includes, upon the theory that the assignment, with the aid of the statute, carries into the trust all of the debtor's property, and that such as has been fraudulently transferred is, so far as the creditors are concerned, the property of the assignor. *Seibert* v. *Milligan, ante*, p. 106; *Lord* v. *Fisher*, 19 Ind. 7; *Hasseld* v. *Seyfort*, 105 Ind. 534.

Preferences can not, however, be given in a deed, which the debtor makes for the purpose of availing himself of the benefit of the statute regulating voluntary assignments.

Where an insolvent debtor appeals to the statute, and makes an assignment under its provisions, he, by that act, surrenders the dominion over his property to the court. It is there to be administered under the provisions of the law,

for the equal benefit of all his creditors, subject to such valid liens as he may have encumbered it with. *Henderson* v. *Pierce*, 108 Ind. 462; *Grubbs* v. *Morris, supra; Fisher* v. *Syfers*, 109 Ind. 514; *Seibert* v. *Milligan, supra; Lord* v. *Fisher*, *supra; Wilcoxon* v. *Annesley*, 23 Ind. 285; *McGoldrick* v. *Slevin*, 43 Ind. 522; *Cushman* v. *Gephart*, 97 Ind. 46; *Lake Shore Banking Co.* v. *Fuller*, 1 Atl. Rep. 731.

The question then comes to this : Does the making of a mortgage by an insolvent debtor, which covers all his property, and which is made and received to secure part of his *bona fide* debts, in contemplation of an assignment which follows, carry the mortgage into, and make it a part of the subsequent assignment? Or is the mortgage so made and received wiped out and invalidated by the assignment?

We can not affirm either of the foregoing propositions. We have already seen that such a debtor, acting in good faith, may make a valid mortgage upon the whole or any part of his property, to secure a *bona fide* debt, and that an assignment has no retroactive effect. Unless, therefore, it can be held, that such a mortgage, although intended to secure certain debts, shall be treated as a general assignment, which enures to the benefit of all the mortgagor's creditors, without regard to his intention, there would seem to be no rational ground upon which it can be held that the transactions, taken together, constitute an assignment. The instrument before us has all the characteristics of a mortgage. It does not purport to be an assignment, and it is very clear that it was not intended to have effect as an assignment.

There is no rule of construction more wisely or firmly settled than that which declares that contracts which, according to the policy of the law, parties have the right to make, are to be interpreted and carried into effect according to the intent of the contracting parties, as such intent appears in the instrument.

When it is determined, therefore, that Miller Bros., so long as they had the *jus disponendi* of their property, had the right

to prefer such of their creditors as they chose, by giving them security by way of mortgage, on all their property, and that the mortgage in question was intended to have effect as a security, there is no power in the courts to say, that such instrument shall nevertheless operate as an assignment under the statute.

There can be no difficulty in recognizing the distinction between an instrument which was intended to effect an assignment under the statute, and one which the parties intended to operate as a security for the payment of certain designated debts; nor yet between an instrument such as either of the foregoing, and one which was intended neither as an assignment under the statute, nor as a security for the payment of certain debts.   Where the purpose of the failing debtor is to make an assignment under the statute, and such purpose appears in the deed, the courts will give the instrument a liberal construction, and take jurisdiction and administer the trust, according to the assignment law.   Where the instrument is intended as a security for the payment of honest debts, it will be enforced according to its terms.   Where it appears that an instrument was intended to effect an assignment of all the debtor's property, upon a scheme independent of the statute, and not to be administered by the courts for the benefit of all the assignor's creditors, and which was not intended as a security for certain specified debts, such an assignment falls within the prohibition of the statute governing voluntary assignments, and may be avoided by creditors who do not assent thereto.

The purpose of the assignment law was not to prevent a debtor in failing circumstances from preferring one creditor over another, by a prior sale or security, but to protect creditors from injury by enforcing equality, when the debtor resorted to the assignment law, thereby putting his property in the custody of the law, and placing it beyond the reach of the ordinary processes to which they might have resorted.

Under the statute, after an assignment becomes effectual,

no creditor, not having a prior lien, can gain a preference, nor has any creditor the right to object, that preferences have been gained by others who, by superior vigilance, in good faith acquired liens prior to the assignment. *Lampson* v. *Arnold*, 19 Iowa, 479; *Farwell* v. *Howard*, 26 Iowa, 381; *Kohn* v. *Clement*, 58 Iowa, 589; *Cadwell's Bank* v. *Crittenden*, 66 Iowa, 237; *Gage* v. *Parry*, 69 Iowa, 605; *Johnson's Appeal*, 103 Pa. St. 373; *Dunham* v. *Whitehead*, 21 N. Y. 131; *Atkinson* v. *Tomlinson*, 1 Ohio St. 237; *United States* v. *McLellan*, 3 Sum. 345; *Henshaw* v. *Sumner*, 23 Pick. 446; *Dias* v. *Bouchaud*, 10 Paige, 445 (461); *Sweetser* v. *Camp*, 29 N. W. R. 506; *In re Gazett*, 29 N. W. R. 347; *In re Assignment of Guyer*, 69 Iowa, 585.

There is not entire harmony in the decisions of all the courts upon the subject under consideration. In the absence of a statute making securities given by an insolvent debtor, in contemplation of an assignment, void, we are constrained to follow the rule of decision which has obtained in this State, and under which such a debtor is at liberty to make such preferences by paying or securing *bona fide* debts, so long as he does not choose to make a voluntary assignment for the benefit of all his creditors. This policy has prevailed so long, that a change, if a change is desirable, can only be made by legislative intervention.

The judgment is affirmed, with costs.

Filed March 29, 1887.