ON PETITION FOR REHEARING
The Herzogs have petitioned the court for rehearing of their appeal. All but one of their contentions were adequately discussed and dismissed in our earlier opinion, 702 F.2d 127.
We held in our earlier opinion that once McMerty. showed that some of the funds used to purchase the Burritt land were from Endeco, the burden shifted to the Herzogs to show what proportion, if any, was not embezzled. In deciding that McMerty had met this burden, we relied, as did the district court, on findings by Chief Judge Devitt in McMerty I, a similar action. We noted that Chief Judge Devitt had found that between May, 1976 and August, 1978 the only non-Endeeo income Herzog received was a $10,000.00 loan and a $35,-000.00 trustee fee received from another bankruptcy. The Herzogs have pointed out that Chief Judge Devitt’s finding was not so time-specific, and argue that this court should not rely on such a general finding in deciding that Herzog improperly used En-deco money to purchase the Burritt land.
Even if the findings of Chief Judge Devitt are not as time-specific as we assumed, there is still abundant unrebutted evidence supporting the district court. The trial exhibits show that at least $70,000.00 of embezzled Endeco money was placed in bank accounts from which Herzog paid for the Burritt land.
The Herzogs made a down payment on the Burritt land to Steven Grimstad on June 22, 1977 of $95,043.00 — $25,043.00 came from Herzog’s accountant bank account, $40,000.00 from Herzog’s Trustee bank account, and $30,000.00 from the bank account of Jason Enterprises which Herzog controlled. It is said that another $5,000.00 had been paid in November, 1976.
Herzog’s bank records show that almost all the money in all the accounts came from Endeco. Further, Herzog was convicted of *431 embezzling $70,000.00 in June of 1977. These embezzlements were accomplished by depositing a $40,000.00 check from Endeco into the Jason Enterprises Account on June 22, 1977, the same day a $30,000.00 check was drawn on that account to Grimstad as part of the down payment, and by depositing a $30,000.00 check from Endeco in his accountant’s account on June 7, less than two weeks before Herzog drew a $25,043.00 check to pay for the Burritt land.
Even if we assume that the rest of the money in those two bank accounts was not embezzled, the presumption is that the embezzled funds were used to buy the Burritt land. Under North Dakota law, when embezzled funds are commingled with other moneys, the burden is on the wrongdoer to establish that nonembezzled money was not used to buy the property on which a constructive trust is sought to be placed. In Engstrom v. Larson, 77 N.D. 541, 44 N.W.2d 97 (N.D.1950), the North Dakota Supreme Court held that “where the commingling is through the fault of the [constructive] trustee, the entire mass will be treated as trust property or funds except insofar as the trustee may be able to distinguish what is his.” 44 N.W.2d at 109, quoting 54 Am.Jur. Trusts § 256. Thus, since Herzog commingled wrongfully obtained funds with “his” money, the burden was on him to show that “his” money was used to buy the Burritt land.
Finally, it is important to remember that the constructive trust is an equitable remedy. It is imposed to prevent unjust enrichment when property is acquired by fraud or breach of a fiduciary duty. Weigel v. Rippley, 283 N.W.2d 123, 129 (N.D. 1979); Scheid v. Scheid, 239 N.W.2d 833, 838 (N.D.1976). In this case the equities are all on the side of McMerty and Endeco.
For the reasons stated here and in our earlier opinion of March 10,1983, judgment of the district court is affirmed.
Petition of appellants for rehearing filed in this cause having been considered, it is now here ordered by this Court that the same be, and it is hereby, denied.